## HORRIGAN, sheriff, v. SAVANNAH GROCERY COMPANY.

1. Where, upon the trial of a money rule against a sheriff, it appears that the amount in controversy was delivered by him to a third party (upon whose judgment the money was raised) to be held in custody for the officer, in contemplation of law the money has never left the officer's possession; and an execution deposited with him immediately after such "delivery" is a sufficient "deposit of lien" upon which to predicate the rule.
2. Where a court acting as both judge and jury, rendered a valid judgment which is supported by a statement of facts which the defendant agreed was correct, the decree will not be disturbed because the defendant subsequently testified to facts contradictory to those upon which the judgment was based.
3. Under the act creating the October term of Chatham superior court, cases which had been brought to the June term, 1904, of that court, and which were not legally triable at that term, stood for trial at the December term, and could not be tried at the October term without the consent of the parties; yet, where a defendant to such a suit had absconded, and a judgment was entered against him at the October term, such judgment was merely voidable, not absolutely void.
4. A sheriff is not protected from a rule against him upon the ground that the execution upon which the rule is based issued upon an irregular proceeding.

Submitted November 18, 1905.—Decided August 9, 1906.

Rule. Before Judge Norwood. City court of Savannah. January 28, 1905.

The Savannah Grocery Company brought a rule against Horrigan as sheriff of the city court of Savannah, to compel him to pay over to it some two hundred and odd dollars alleged to be in his hands and subject to an execution in its favor. The facts are, in substance, as follows: The Chatham Real Estate & Improvement Company held a lien upon certain real estate in the posses-

sion of one Silverberg, to the amount of $3,132.57 principal, and reduced its claim for principal, interest, and $213.25 as attorney's fees, to judgment on June 10, 1904. On September 6, 1904, the property was sold under this execution and bid in by the Savannah Grocery Company for $3,150.00. In the meanwhile a suit was pending in the superior court, in which the Savannah Grocery Company was seeking to foreclose a mortgage junior to the Real Estate and Improvement Company's lien upon the same property, and at the October term of the superior court, to wit, on October 20, 1904, the Grocery Company obtained a judgment against Silverberg, to be levied upon the property aforesaid. The Savannah Grocery Company did not pay over to the sheriff the amount of its bid on the property until October 21, 1904, the day after it had reduced its mortgage against said property to judgment. "On October 21st, 1904, Mr. A. A. Lawrence, acting as attorney for the Savannah Grocery Company, paid Mr. J. J. Horrigan, sheriff, the sum of $3,150. At the time this was paid it was understood between Mr. Lawrence and Mr. Horrigan that the Chatham Real Estate & Improvement Company were to be paid the amount of their claim with interest, less the sum of $213.25 which they claimed for attorney's fees; that the Savannah Grocery Company was to be paid the sum of $637.15, and that Mr. Horrigan should retain the said sum of $213.25 to be litigated for by the Savannah Grocery Company and the Chatham Real Estate & Improvement Company. At the time Mr. Lawrence told Mr. Horrigan that an execution in favor of the Savannah Grocery Company was in the hands of the clerk of the superior court for docketing, and asked Mr. Horrigan if he would acknowledge deposit of the execution; to which Mr. Horrigan assented and agreed to get the execution from the clerk when he went down to the court-house. Mr. Horrigan stopped by the clerk's office when he went to the court-house, and the clerk had the execution but had not finished docketing it. Mr. Horrigan told the clerk that he was to have possession of it and directed the clerk to deliver it into his, Mr. Horrigan's, possession as soon as it had been placed on the docket. After this Mr. Horrigan saw Mr. Johnson, attorney for the Chatham Real Estate & Improvement Company, carrying him a check for $2,132.57. Mr. Johnson demanded of Mr. Horrigan the other $213.25. Mr. Horrigan informed Mr. Johnson of the claim of the Savannah Grocery Company.

Mr. Johnson still requested the money, and Mr. Horrigan finally consented to deliver to him the money, he to hold it as custodian for Mr. Horrigan. Before Mr. Horrigan returned to his office after seeing Mr. Johnson the execution was in his office, and Mr. Horrigan considered the execution in his possession all the time through. If Mr. Horrigan had declined to acknowledge deposit of the execution, Mr. Lawrence had an opportunity and could have gotten the execution and placed it in Mr. Horrigan's hands before he paid over the money, and Mr. Horrigan made a full acknowledgment of deposit of the execution with him and waived the deposit. Mr. Horrigan paid Mr. Lawrence for the Savannah Grocery Company, on said execution, the sum of $637.15." On the trial the sheriff corrected a portion of the agreed statement of facts above quoted, by saying: "The money was not paid to Mr. Johnson on condition that he hold it as my custodian, but was paid to him on his assurance that if I should be legally required to return the money into court. Lawton & Cunningham would hold me harmless."

The rule was made absolute, and the defendant excepted.

It appears that the contract for attorney's fees made by Silverberg with the Chatham Real Estate & Improvement Company was executed prior to the act approved December 12, 1900 (Acts 1900, p. 53), and that Silverberg made no defense to said suit, he having absconded prior to the trial. It also appears that the suit of the Savannah Grocery Company against Silverberg was brought to the June term, 1904, of the superior court of Chatham county, and judgment rendered thereon at the October term, 1904, without the consent of the defendant, who had departed; it being alleged by the sheriff that the judgment was null and void, because the act which created the October term contains this language: "All cases which have been brought to the June, 1904, term of said superior court, which are not by law triable at the June term of said court, shall stand for trial at the December term, 1904, of said court, but by consent of the parties may be tried at the October, 1904, term of said court." Acts 1904, p. 66.

*Lawton & Cunningham* and *H. W. Johnson,* for plaintiff in error.
*Osborne & Lawrence,* contra.

BECK, J. (After stating the foregoing facts.)

1, 2. It has been decided by this court that a judgment for attorney's fees, founded upon a suit on a note or deed containing an

obligation to pay attorney's fees in addition to the stipulated rate of interest, is void where the record shows that the defendant did not appear or plead, and that the instrument sued on was executed before the passage of the act of 1900, which amended section 3667 of the Civil Code. *Demere* v. *Germania Bank,* 116 *Ga.* 317. But, though the judgment for attorney's fees in the case at bar be void, it does not appear that the execution issued thereon under which the sheriff sold the land was not fair on its face and apparently valid. And had the sheriff violated his agreement to hold the money until the rightful ownership thereof could be judicially determined, and paid to the real estate company the amount called for by the void judgment, it would seem that he would have been authorized in so doing, being protected by the execution which was apparently regular and valid (*Johnson* v. *Fox,* 51 *Ga.* 270), although he had aliunde notice of its invalidity. Murfree on Sheriffs, § 103, a; *Wilbur* v. *Stokes,* 117 *Ga.* 545. But how that may be it is not now necessary to decide; for the sheriff himself admits that he had agreed to hold the money until the courts should decide to whom it rightfully belonged, and that he only delivered it to counsel for the real estate company as his depositary. It is true that the officer attempted to correct his testimony in this regard, saying that he did not deliver the money to the attorney to be held in custody for him, but did so upon the assurance that "if he should be legally required to return the amount of attorney's fees into court, [counsel] would protect him," thus attempting to establish an actual payment to the real estate company of the amount of the attorney's fees before the execution of the grocery company came into his hands. And this correction was corroborated by counsel for the real estate corporation. But whether or not these facts would constitute a valid payment need not be decided; for although the question as to whether the court, acting as both judge and jury, believed the subsequent testimony of the sheriff in preference to his written statement is a matter of conjecture, still his judgment was right and was supported by evidence, and it will be presumed that the reasoning upon which he placed his finding was based upon that evidence which properly supported it. We certainly can not say that he did not believe the signed statement of the sheriff, but accepted as true his contradictory oral testimony. Wherefore we hold that under the evidence the money is still in

the possession of the sheriff—that in the eye of the law he has never parted with it; and it follows from this ruling that the question of constructive deposit of an execution (argued at length by counsel for the sheriff) does not enter the case, and the contention that the plaintiff company can not bring a rule against the officer for money which he has paid out upon process fair on its face, before the plaintiff's lien was deposited with him, is robbed of its support and falls to the ground. For whether the constructive delivery of the plaintiff's execution was such a deposit as the law will recognize or not, the fact remains that immediately after the abortive attempt at delivery by the sheriff of the amount of the attorney's fees to the real estate company, the grocery company's fi. fa. was actually placed in his hands, and under its authority he paid to the plaintiff company the balance raised by the real estate company's judgment, minus the amount of the judgment for the attorney's fees.

3. But the sheriff contends that the judgment of the plaintiff company is null and void and could not be a lien upon funds in his hands although actually deposited with him. It is true that the judgment of the plaintiff was rendered at the October term of Chatham superior court and that under the law creating that term the case could not be tried until the December term without the consent of the parties. It is also true that the defendant in that action did not consent to a trial at the October term. But this irregularity could not be said to render the judgment absolutely void. The court had jurisdiction of the parties and of the subject-matter; and if it erroneously construed the absconding of Silverberg to amount to a consent on his part that the case could be tried at the October term, such error can not make the judgment absolutely void (although irregular it undoubtedly is) and subject to collateral attack. "The premature entry of a judgment, as, for example, before the expiration of the time to answer, is merely voidable, it is not void and subject to collateral attack." 17 Am. & Eng. Enc. L. (2d ed.) 1072, and citations. See also Black, Judg. § 181.

4. Nor does the fact that the plaintiff's judgment is erroneous afford the sheriff any defense for not paying to it the amount of the attorney's fees. "A sheriff who refuses to collect a fi. fa. because it issued upon an irregular proceeding will not be protected

from a rule on that ground." *Gladden* v. *Cobb,* 73 *Ga.* 235. See also *Singer Sewing Machine Company* v. *Barnett,* 76 *Ga.* 377.

Indeed, from every avenue of approach the position of the sheriff is vulnerable. There is no strength in any of his defenses. The grocery company undoubtedly has the equitable claim to the amount in controversy. The real estate company's judgment is void, and whenever it is attacked, no matter where, it must fall of its inherent weakness.

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent, and Atkinson, J., who did not preside.*